IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

Wells Fargo Bank, N.A.,

    Plaintiff,

v.

Cherry Creek Mortgage, LLC,

    Defendant.

Case No. 0:23-cv-02831

**COMPLAINT**

Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo"), for its complaint against defendant Cherry Creek Mortgage, LLC ("Cherry Creek") alleges as follows:

### Introduction

1. Cherry Creek had a "correspondent lender" relationship with Wells Fargo.

2. In general, Cherry Creek issued loans either to home buyers purchasing new residences or to homeowners who wish to refinance their residences. Those loans are secured by mortgages on the borrowers' residences.

3. Cherry Creek then sold some of the mortgage loans to Wells Fargo.

4. A written agreement governs the terms under which Cherry Creek sold mortgage loans to Wells Fargo. The agreement required Cherry Creek to: (1) represent and warrant that each mortgage being sold has certain characteristics; (2) repurchase from Wells Fargo any mortgage that does not possess those characteristics; and (3) reimburse Wells Fargo for certain losses, costs, and expenses associated with any repurchased mortgage.

5. Cherry Creek violated its representations and warranties by selling to Wells Fargo at least one mortgage loan that did not have the required characteristics.

6. Cherry Creek further breached its contractual obligations by refusing to repurchase and/or indemnify Wells Fargo for its losses on this loan and to indemnify Wells Fargo for certain losses, costs, and expenses that Wells Fargo incurred.  Cherry Creek also refused to pay fees due to Wells Fargo with respect to other transactions under the terms of the parties' contract.

7. Thus, Wells Fargo is suing to enforce Cherry Creek's contractual obligations.

## Parties

8. Plaintiff Wells Fargo Bank, N.A. is a national banking association whose articles of association designate its main office as located in Sioux Falls, South Dakota, thus making it a citizen of South Dakota for purposes of diversity jurisdiction.

9. Defendant Cherry Creek Mortgage, LLC is a Delaware limited liability company with its principal place of business at Greenwood Village, Colorado. According to a Rule 7.1 disclosure statement filed on October 18, 2022, by Cherry Creek Mortgage, LLC, it is a wholly owned subsidiary of Cherry Creek Holdings Group, LLC, which is a Delaware limited liability company with its principal place of business in Greenwood Village, Colorado. According to a December 28, 2020 corporate filing with the Colorado Secretary of State, the members of Cherry Creek Holdings Group, LLC are: (1) Jeffrey S. May (citizen of Colorado); and (2) John A. May (citizen of Florida).  Therefore, all of Cherry Creek Holdings Group, LLC's members are citizens of the states of Colorado and

Florida for purposes of diversity jurisdiction. Cherry Creek is therefore a citizen of the States of Colorado and Florida for purposes of diversity jurisdiction.

## Jurisdiction and Venue

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because Wells Fargo and Cherry Creek are citizens of different states (South Dakota, Colorado, and Florida, respectively) and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11. This Court has personal jurisdiction over Cherry Creek because Cherry Creek contractually waived any objection to this Court's personal jurisdiction and agreed that any lawsuit between the parties would be pursued in Minnesota.

12. Venue is proper in this Court under 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims asserted in this action occurred in this District. Specifically, Wells Fargo has had substantial operations and personnel in Minnesota at all times relevant to this lawsuit.

## Facts

**A.    The Parties Entered into the Loan Purchase Agreement.**

13. On or about December 9, 2020, Cherry Creek and Wells Fargo Bank, N.A. entered into an Amended and Restated Loan Purchase Agreement (the "LPA"). A copy of the LPA is attached hereto as **Exhibit 1**. The LPA states the terms under which Cherry Creek may sell residential mortgage loans to Wells Fargo.

14. Paragraph 1 of the LPA incorporates the terms of the Wells Fargo Funding Seller Guide ("Seller Guide"). The Seller Guide sets forth the representations and

3

warranties that Cherry Creek makes to Wells Fargo for every mortgage that Cherry Creek sells to Wells Fargo.

15. Together, the LPA and Seller Guide (collectively, the "Contract") form the complete agreement between the parties.

16. In the Contract, Cherry Creek agreed that it would sell to Wells Fargo only mortgage loans that met the requirements described in the Seller Guide.

17. Wells Fargo sold the loans that it purchased from Cherry Creek to various investors, including Fannie Mae and Freddie Mac, which are government-sponsored enterprises chartered by Congress to keep liquidity flowing to mortgage lenders such as local and national banks, thrifts, credit unions, and other financial institutions.

18. When loans that Cherry Creek sold to Wells Fargo, and Wells Fargo subsequently sold to an investor, did not meet the requirements of the purchasing investor, that purchasing investor would require Wells Fargo to repurchase and/or indemnify the investor for its losses on those loans.

19. When those loans were subsequently reviewed by Wells Fargo and found to not meet the requirements described in the Seller Guide between Wells Fargo and Cherry Creek (and were therefore ineligible for sale under the Contract), then Wells Fargo, in turn, is entitled to have Cherry Creek repurchase and/or indemnify Wells Fargo for its losses on those loans that do not meet the requirements of the Seller Guide.

20. In addition to setting forth Cherry Creek's representations and warranties regarding the characteristics of the mortgage loans that Cherry Creek sold to Wells Fargo,

the Contract also specified remedies for Wells Fargo should Cherry Creek's contractual representations or warranties prove untrue with respect to a mortgage loan.

21. In accordance with section 305.03 of the Seller Guide, Cherry Creek agreed that it would repurchase any loan that did not satisfy the contractual representations and warranties it had made to Wells Fargo.

22. In accordance with section 305.10 of the Seller Guide, Cherry Creek further agreed to indemnify Wells Fargo for any liabilities, costs, and expenses, expressly including attorneys' fees, resulting from Cherry Creek's breach of any representation or warranty.

23. In accordance with section 305.10 of the Seller Guide, Cherry Creek also expressly agreed to indemnify Wells Fargo for losses resulting from the Real Estate Owned ("REO") process by which Wells Fargo acquires title to a mortgaged property through such means as foreclosure, taking a deed in lieu of foreclosure, abandonment of the property, or other reclamation of the property.

**B.    Cherry Creek Breached Its Contractual Representations and Warranties with Regard to the "Marina del Rey Loan" It Sold to Wells Fargo.**

24. Cherry Creek sold at least one mortgage loan to Wells Fargo that violated Cherry Creek's representations and warranties as set forth in the Contract.

25. On or around March 11, 2022, Cherry Creek sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 6961) secured by a property in Marina del Rey, California (the "Marina del Rey Loan"). A copy of the portion of the Loan Purchase Schedule, dated March 11, 2022,

5

reflecting Wells Fargo's purchase of the Marina del Rey Loan is attached hereto as **Exhibit 2**.

26. The Marina del Rey Loan has an outstanding balance of at least $716,827.19 in principal, interest, and escrow advance, in addition to applicable fees and bears an interest rate of 4.000%.

27. The loan file for the Marina del Rey Loan had a program violation because there was an issue with title on the property.

28. The Marina del Rey Loan did not meet the requirements of the Seller Guide, and Cherry Creek's sale of the Marina del Rey Loan constituted a violation of Cherry Creek's contractual representations and warranties to Wells Fargo.

29. Wells Fargo sustained a loss as a result of the Marina del Rey Loan not meeting the requirements of the Seller Guide.

30. On or about July 20, 2023, Wells Fargo sent an invoice to Cherry Creek for the amount that Cherry Creek owed to Wells Fargo at that time to repurchase the Marina del Rey Loan and/or indemnify Wells Fargo for its loss on the Marina del Rey Loan and to pay fees and penalties as specified in the Contract.

31. Cherry Creek refused to repurchase the Marina del Rey Loan and/or indemnify Wells Fargo for its loss on the Marina del Rey Loan and refused to pay fees and penalties as specified in the Contract.

32. The amount that Cherry Creek currently owes to Wells Fargo to repurchase the Marina del Rey Loan and pay fees and penalties under the Contract is at least $716,827.19.

## COUNT I
## (Breach of Contract—Specific Performance)

33. Wells Fargo incorporates the averments in the preceding paragraphs as if fully restated herein.

34. Cherry Creek breached the Contract when it sold the Marina del Rey Loan to Wells Fargo. With respect to the sale of the Marina del Rey Loan, Cherry Creek violated representations and warranties as set forth in the Seller Guide.

35. The Contract, including but not limited to section 305.03 of the Seller Guide, requires Cherry Creek to repurchase the Marina del Rey Loan as a consequence of Cherry Creek's breach of representations and warranties set forth in the Seller Guide.

36. Wells Fargo notified Cherry Creek that Cherry Creek had breached representations and warranties for the Marina del Rey Loan and demanded that Cherry Creek repurchase the loan.

37. To date, Cherry Creek has refused to repurchase the Marina del Rey Loan.

38. Cherry Creek has materially breached the Contract, including section 305 of the Seller Guide, by refusing to honor its obligation to repurchase the Marina del Rey Loan.

39. Wells Fargo is entitled to an order requiring Cherry Creek to repurchase the Marina del Rey Loan.

## COUNT II
## (Breach of Contract—Loan Representations and Warranties)

40. Wells Fargo incorporates the averments in the preceding paragraphs as if fully restated herein.

41. Cherry Creek breached its representations and warranties as set forth in the Seller Guide with regard to the sale of the Marina del Rey Loan. Cherry Creek's sale of this loan to Wells Fargo therefore breached the Contract.

42. Wells Fargo has demanded, in accordance with the Contract terms, that Cherry Creek repurchase the Marina del Rey Loan. Cherry Creek has further breached the Contract by refusing to repurchase the loan.

43. Wells Fargo has demanded that Cherry Creek pay certain fees and costs, as specified in the Contract, arising from the Marina del Rey Loan. Cherry Creek has further breached the Contract by failing to pay fees and costs for this loan as specified in the Contract.

44. Wells Fargo has suffered damages as a result of Cherry Creek's breaches of the Contract in the amount of at least $716,827.19. This amount includes the unpaid balance, accrued interest, escrow advance, and service-release premium, as applicable, plus other fees and costs, for the Marina del Rey Loan.

## COUNT III
### (Contractual Attorneys' Fees)

45. Wells Fargo incorporates the averments in the preceding paragraphs as if fully restated herein.

46. Under the Contract, Cherry Creek agreed to indemnify Wells Fargo for all costs, including attorneys' fees, incurred by Wells Fargo in enforcing its rights under the Contract.

47. As a result of Cherry Creek's failure to honor its contractual obligations, Wells Fargo has incurred costs and attorneys' fees to enforce its rights under the Contract.

48. Wells Fargo is entitled to recover the attorneys' fees and related costs that it has incurred and will incur in prosecuting this lawsuit to enforce its rights under the Contract.

**WHEREFORE**, Wells Fargo Bank, N.A., respectfully asks that the Court:

1. Enter an order requiring Cherry Creek to repurchase the Marina del Rey Loan in accordance with the Contract;

2. Enter judgment in favor of Wells Fargo and against Cherry Creek in the amount of all damages, costs, and expenses that Wells Fargo has suffered and will suffer in the future as a result of Cherry Creek's breaches of its contractual obligations (an amount currently in excess of $716,827.19), plus all costs and expenses (including attorneys' fees) that Wells Fargo incurs in connection with this litigation, plus pre-judgment interest at the legal rate; and

3. Award any additional relief that the Court deems just and equitable.

Dated: September 14, 2023

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Joelle Groshek*
Joelle Groshek (#0398377)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Telephone: (612) 766-7000
Fax: (612) 766-1600
joelle.groshek@faegredrinker.com

and

Lance W. Lange, *pro hac vice* forthcoming
Iowa Bar No.: AT00004562
801 Grand Avenue, 33rd Floor
Des Moines, IA  50309
Telephone: (515) 447-4725
lance.lange@faegredrinker.com

*Counsel for Plaintiff Wells Fargo Bank, N.A.*